IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| JOHN RAY MELCHER § | |
| § | |
| VS. § | CIVIL ACTION NO. G-13-388 |
| § | |
| MATTHEW DRAKE WIGGINS, JR. § | |
| and CITY OF KEMAH § | |

## OPINION AND ORDER

Before the Court, with the consent of the Parties, is a Motion to Dismiss filed by Defendant Matthew Drake Wiggins, Jr., and a Motion to Dismiss filed by Defendant City of Kemah, Texas; both Motions seek the dismissal of the Complaint of Plaintiff, John Ray Melcher. The Motions are briefed and ripe. The Court now issues this Opinion and Order.

Melcher's complaint alleges a fascinating intrigue. According to Melcher, Wiggins, the Mayor of Kemah, concocted a scheme to acquire favorable pieces of property in the aftermath of Hurricane Ike which struck Kemah in September 2008. Wiggins would order the appropriate city officials to deny permits to repair the targeted properties and, instead, seek to condemn them. Wiggins would then purchase the properties at vastly diminished prices, either directly or indirectly, from the owner, the mortgage holder following foreclosure or the bankruptcy trustee. In Melcher's case it appears his inability to repair his business on Texas Avenue in Kemah, Texas, caused his mortgage to be foreclosed and Wiggins purchased the property from the mortgagee bank through a straw purchaser. Ultimately, Melcher filed for bankruptcy. In the meantime, the property has generated in

excess of $100,000.00 in rental payments that should have gone to Melcher.[1] After Melcher discovered Wiggins' scheme in May 2013, he sued Wiggins and the City for violations of RICO and the Texas Theft Liability Act; constitutional torts under § 1983; conversion; and negligence.

**NON-RICO CLAIMS**

Both Defendants have moved to dismiss all of Melcher's non-RICO claims as barred by the applicable two year statutes of limitations. In support of their argument they have submitted a copy of Melcher's bankruptcy petition, filed on August 26, 2010, which does not list the Texas Avenue property on Melcher's "Real Property" schedule. As a result, the Defendants assert that the undated loss of Melcher's property had to have occurred at sometime prior to August 26, 2010, more than three years prior to the filing of this case on October 27, 2013. Melcher responds by alleging that he did not "uncover/discover" Wiggins' subterfuge until May 2013 when he saw some media reports; learned of a possible federal investigation; received information from another local businessman; read a deposition in a case related to Wiggins' actions; and, while under subpoena in that case, spoke with the parties and six or more similarly situated victims of the Defendants' malfeasance. Apparently, Melcher believes that under the "discovery rule" his lawsuit was timely.

---

[1] This "factual" recitation is the best the Court can ascertain from Melcher's vague allegations, but even if it is partially inaccurate, it will not change the Court's rulings.

"The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." Computer Associates International, Inc. v. Alkai, Inc., 918 S.W. 2d 453, 455 (Tex. 1994)   The application of the discovery rule has been limited only to those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable. Id. 456   There can be no doubt Melcher knew of the actual loss of his property whenever it occurred and, most likely, the Court could justifiably infer from Melcher's alleged facts that Wiggins tried to keep his activities concealed from Melcher and his other alleged victims.  But this Court cannot assume the existence of unalleged facts to raise an inference that Wiggins' covert actions were "undiscoverable" within two years of Melcher's loss of the property.  Undiscoverability "encompasses the requirement that the injury is not ordinarily discoverable, **even though due diligence has been used**." Id. 456 (emphasis added)   In asserting the discovery rule as a defense to the statute of limitations, Melcher must establish not only that he did not discover Wiggins' involvement until May 2013, he must also establish that despite a reasonable investigation into the circumstances surrounding his loss he was unable, or could not have, discovered or "uncovered" it. KPMG Peat Marwick v. HCH, 988 S.W. 2d 746, 749 (Tex. 1999)   None of Melcher's allegations surrounding the circumstances of his "discovery" of Wiggins' action can support an inference that a reasonable investigation would not have timely discovered Wiggins' wrongful conduct.  In the absence of factual allegations that Melcher satisfied his duty to investigate, this Court may not apply the discovery rule to his causes of action.

It, therefore, appears that all of Melcher's non-RICO claims asserted against Wiggins and the City are time-barred.

**RICO CLAIMS**

The City argues that, as a municipality, it cannot be sued under RICO. This Court agrees. The cases holding that municipalities cannot be sued under RICO are grounded on the long-established common law principal that governmental agencies cannot be held liable for punitive damages because blameless tax payers would be shouldered with the payment; therefore, because RICO's treble damages are mandatory, Congress must not have intended to impose possible RICO liability on municipalities. See Gentry v. Resolution Trust Corporation, 937 F.2d 899, 906-914 (3$^d$ Cir. 1991); Pedrina v. Chun, 97 F.3d 1296, 1300 (9th Cir. 1996)   The Fifth Circuit has not squarely decided the issue, but in Abell v. Potomac Insurance Co., 858 F.2d 1104, 1141 (5th Cir. 1988), it held that RICO's mandatory treble damages are punitive in nature. Consequently this Court believes that the Fifth Circuit, if called upon to do so, would also exempt municipalities from RICO exposure. Cf. Nationwide Public Adjusters, Inc. v. Edcouch-Elsa Independent School District, 913 F.Supp. 2d 305 (S.D. Tex. 2012) (citing with favor Gentry and Pedrina while deciding a school district enjoyed RICO exemption)   It, therefore, appears that Melcher's RICO claim against the City of Kemah must be dismissed.

Wiggins argues, *inter alia*, that Melcher's RICO claim against him is barred by the four year statute of limitations applicable to RICO claims. In Rotella v. Wood, 147 F.3d 438, 439-40 (5th Cir. 1988), aff'd ,528 U.S. 549 (2000), the Fifth Circuit held that a RICO

4

cause of action accrues upon the discovery of the injury in question, not only upon discovery of the pattern of the underlying racketeering activity. Melcher's injury was the loss of his property. At present, there is no evidence of the accrual date of his injury, but that fact should be easily determined and may prove promptly dispositive of Melcher's RICO claim against Wiggins.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Motion to Dismiss (Instrument no. 10) of Defendant, City of Kemah, is **GRANTED** and all claims asserted by Melcher against the City are **DISMISSED**.

It is further **ORDERED** that the Motion to Dismiss (Instrument no. 14) of Defendant, Matthew Drake Wiggins, Jr., is **GRANTED, in part**, and all non-RICO claims asserted against Wiggins by Melcher are **DISMISSED**.

It is further **ORDERED** that Wiggins's Motion to Dismiss Melcher's RICO claim is hereby **CONVERTED** to a Motion for Summary Judgment pursuant to Rule 12(d) and the Parties are given until May 19, 2014, to present material pertinent solely to the date upon which Melcher lost his interest to the Texas Avenue property.

**DONE** at Galveston, Texas, this ___21st___ day of April, 2014.

_____
John R. Froeschner
United States Magistrate Judge